J. R. Wilson v. Commissioner.
Wilson v. Commissioner
Docket No. 13877.
United States Tax Court
1949 Tax Ct. Memo LEXIS 213; 8 T.C.M. (CCH) 364; T.C.M. (RIA) 49090; April 21, 1949
*213 Geo. E. H. Goodner, Esq., and Scott P. Crampton, Esq., Munsey Bldg., Washington, D.C., for the petitioner. Homer F. Benson, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion The respondent determined a deficiency of $1,477.38 in income tax for the calendar year ended December 31, 1941. One of the issues raised by the pleadings was settled by stipulation, as shown in the record, and another was waived by the petitioner. The sole remaining issue is whether the respondent erred in refusing to recognize petitioner's wife, Clara Wilson, as a partner in the business conducted under the name of Wilson Chevrolet Company and holding that the entire net income of that firm was taxable to the petitioner. Findings of Fact This case was tried on a partial stipulation of facts, oral testimony and documentary evidence. The stipulated facts are found as stipulated. The petitioner is an individual now residing at Bay Minette, Alabama. His books were kept and his income tax returns were filed on a cash receipts and disbursements basis and by calendar years. The tax returns, waivers, and claims for refund involved in this case were all filed with the *214 collector of internal revenue for the district of Alabama. The petitioner is the husband of Clara Wilson. They were married in 1927. From that date until some time in 1932 they lived at Red Level, Alabama, where petitioner engaged in farming and the operation of a grocery store and meat market. This business venture proved unsuccessful.petitioner's wife from time to time out of her earnings as a school teacher advanced him sums totaling $1,200, which were used to pay business obligations incurred by the petitioner and family living expenses. When petitioner went out of the grocery and meat business in the latter part of 1931, or early in 1932, he owed a considerable amount of money to a bank and others, and he and his wife, on their personal note, borrowed from the Federal Land Bank at Red Level, Alabama, the sum of $1,700, giving a mortgage on a farm which the wife had inherited from her parents as security for the payment of this note. The proceeds of this loan were used to pay petitioner's outstanding obligations. Some time later petitioner and his wife obtained an additional loan from the Federal Land Bank for $1,000, which was used to pay past due installments on the prior loan. *215 These loans were never paid off by petitioner or his wife, Clara Wilson, and prior to 1941 Clara Wilson sold her equity in this farm subject to the unpaid balance on the aforesaid mortgages for the sum of $1,300. The petitioner never gave his wife any note or other writing evidencing an indebtedness to her on account of the funds which she had furnished for their joint use and never made any repayment of such funds to her prior to February 1, 1941. During part of the year 1932, and until September 1933, petitioner was employed by the Liberty National Life Insurance Company and continued to reside at Red Level, Alabama. On about the last-named date he moved to Brewton, Alabama, where he was employed as an automobile salesman by Ruben M. Jernigan, Jr., and R. K. McMillan, doing business as the Brewton Chevrolet Company. In November 1933 petitioner moved to Bay Minette, Alabama, where he operated a Chevrolet agency for Jernigan and McMillan. Thereafter, in 1934, the petitioner, Jernigan, McMillan and Ted Fountain incorporated a company under the name of Bay Minette Chevrolet Company, each one subscribing for one-fourth of the capital stock of the company. This company then operated *216 an automobile business at Bay Minette for a period of about twelve months, at which time petitioner bought the capital stock held by Ted Fountain and became the owner of one-half of the stock of the company. The corporation was then dissolved and the business was thereafter operated as a partnership by the petitioner, Jernigan and McMillan, until 1938. Petitioner had a one-half interest in the partnership and Jernigan and McMillan a one-fourth interest each. In the latter part of 1938 petitioner bought the interest of Jernigan and McMillan in the partnership for $3,750 each. He paid each of them $1,000 cash and gave each his note for $2,750. Petitioner then incorporated the business as the Wilson Chevrolet Company. This corporation issued 100 shares of capital stock, the petitioner owning 99 of said shares. His stock was deposited as security for the notes executed to Jernigan and McMillan. These notes were paid in full some time during the year 1941. On or about January 31, 1941, the corporation, Wilson Chevrolet Company, was dissolved and the business was thereafter conducted under the same name as an unincorporated organization. The assets of the business had a value at that time *217 of $11,178.98. On February 1, 1941, petitioner executed an instrument in writing purporting to transfer to Clara Wilson an undivided one-half interest in the business. This document, omitting formal parts, reads as follows: "KNOW ALL MEN BY THESE PRESENTS, That I, J. R. Wilson, for and in consideration of the sum of ONE HUNDRED ($100.00) DOLLARS and other good and valuable consideration to me in hand paid by CLARA WILSON, the receipt of which is hereby acknowledged, do hereby GRANT, BARGAIN, SELL, CONVEY, TRANSFER, SETOVER, ASSIGN AND DELIVER unto the said Clara Wilson, all the following described personal property, located in the Town of Bay Minette, Baldwin County, Alabama, to wit: "An undivided one-half interest in the business known as Wilson Chevrolet Company, together with all tools, machinery and equipment owned by or used in connection with said business, together with all accounts and moneys due said business. "TO HAVE AND TO HOLD unto the said Clara Wilson, her heirs and assigns forever. "IN WITNESS WHEREOF I have hereunto set my hand and seal on this the 1st day of February, 1941. "(Sgd.) J. R. Wilson" On the same day Clara Wilson executed what purports to be *218 a power of attorney to petitioner authorizing him in her name and behalf to do all things necessary to the operation of the business known as the Wilson Chevrolet Company. This document, omitting formal parts, reads as follows: "KNOW ALL MEN BY THESE PRESENTS, That I, CLARA WILSON of Bay Minette, in Baldwin County, Alabama, do hereby constitute and appoint J. R. Wilson of Bay Minette, in Baldwin County, Alabama, a true and lawful attorney for me and in my name and behalf to execute all necessary papers, checks, drafts, acceptances, deeds, mortgages and any and all other papers necessary for the operation of the business operated and known as Wilson Chevrolet Company, in the Town of Bay Minette, in Baldwin County, Alabama; to receive all accounts, moneys and papers due the said company and issue receipts therefor; to operate and conduct the said business as he sees fit, giving and granting unto my said attorney full power and authority to do and perform all acts necessary and proper to effectuate all and any part of the premises; hereby ratifying and confirming whatsoever my said attorney may do in the premises by virtue hereof. "IN WITNESS WHEREOF I have hereunto set my hand and *219 seal on this the 1st day of February, 1941. "(Sgd.) Clara Wilson" No formal written agreement of partnership was ever executed by petitioner and Clara Wilson. The books of the alleged partnership were kept on an accrual basis and Wilson Chevrolet Company filed a partnership return for 1941, showing a net income of $11,559.75, distributable to petitioner and Clara Wilson as equal partners after payment of a salary of $3,100 to petitioner for services rendered. There was no change in the management or operation of Wilson Chevrolet Company after dissolution of the corporation. Petitioner remained in complete control of the business and was its sole manager. Clara Wilson rendered no service of any kind in connection with the business. Her alleged share of the net income was credited to her account on the books of the company but remained in the business, except for a small amount which was withdrawn for the purchase of silver for the use of the family. She continued to draw on her husband's personal account for funds with which to pay her personal and family expenses. She had no authority to write checks against the partnership account. The petitioner's income tax return for 1941 *220 shows receipt of only one-half of the net income of Wilson Chevrolet Company by petitioner. Respondent determined that Clara Wilson was not a bona fide partner for tax purposes for 1941, and that petitioner was taxable upon the entire net income of the Wilson Chevrolet Company for that year. The petitioner and Clara Wilson did not during the year 1941 intend to join together as partners for the purpose of carrying on the business and sharing in the profits or losses of the Wilson Chevrolet Company. Clara Wilson was not a bona fide partner in the business of the Wilson Chevrolet Company during the taxable year. Opinion LEMIRE, Judge: The petitioner, early in 1941, transferred a one-half interest in the business of Wilson Chevrolet Company to his wife and now claims that she was thereafter an equal partner in it. However, he continued to be in absolute control of it and he operated the business in the same manner as prior to the conveyance. His wife contributed no services of any kind to the business and had no voice in its management. There was no change in the assets used in the business. The respondent determined that the entire earnings in 1941 are taxable to the petitioner *221 individually. The leading cases on this question are , and . The following excerpts are taken from the Court's opinion in the Tower case, supra: "* * * A partnership is generally said to be created when persons join together their money, goods, labor, or skill for the purpose of carrying on a trade, profession, or business, and when there is community of interest in the profits and losses. When the existence of an alleged partnership arrangement is challenged by outsiders, the question arises whether the partners really and truly intended to join together for the purpose of carrying on business and sharing in the profits or losses or both. And their intention in this respect is a question of fact, to be determined from testimony disclosed by their agreement, considered as a whole, and by "their conduct in execution of its provisions." ; Cox v. Hickman, 8 H.L. Cas. 268. * * *
"* * * The question here is not simply who actually owned a share of the capital attributed to the wife on the partnership books. *222 A person may be taxed on profits earned from property, where he neither owns nor controls it. Lucas v. Earl, supra [281 U.S. 111]. The issue is who earned the income and that issue depends on whether this husband and wife really intended to carry on business as a partnership. Those issues cannot be decided simply by looking at a single step in a complicated transaction. To decide who worked for, other wise created or controlled the income, all steps in the process of earning the profits must be taken into consideration. See . * * *
"* * * Before the partnership the husband managed, controlled, and did a good deal of the work involved in running the business, and he had funds at his disposal which he either used in the business or expended for family purposes. The wife did not contribute her services to the business and received money from her husband for her own and family expenses. After the partnership was formed the husband continued to control and manage the business exactly as he had before. The wife again took no part in the management or operation of the business. If it be said that as a limited partner *223 she could not share in the management without becoming a general partner the result is the same. No capital not available for use in the business before was brought into the business as a result of the formation of the partnership. And the wife drew on income which the partnership books attributed to her only for purposes of buying and paying for the type of things she had bought for herself, home and family before the partnership was formed. Consequently the result of the partnership was a mere paper reallocation of income among the family members. The actualities of their relation to the income did not change. There was, thus, more than ample evidence to support the Tax Court's finding that no genuine union for partnership business purpose was ever intended and that the husband earned the income. * * *" The petitioner urges that the consideration for his transfer of one-half interest in the business to Clara Wilson was money which she had advanced to him in prior years. This money was used to pay family living expenses and obligations incurred by the petitioner in an unsuccessful grocery and meat business. None of it was invested in the Wilson Chevrolet Company. The facts here *224 are similar to but less favorable to the petitioner than were those in . In that case the husband transferred a one-half interest in his business to his wife without any consideration and thereafter neither of them rendered any valuable services to it. We held that the wife could not be recognized as a partner in the business. The evidence in this case fails to show that the parties ever really and truly intended to join together as partners for the purpose of carrying on the business and sharing the profits and losses. The respondent correctly determined that the petitioner is taxable on the entire income of the business. Decision will be entered under Rule 50.